# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN ALAN GOOD, | : | |
|     Plaintiff | : | |
| | : | No. 1:20-cv-00446 |
| v. | : | |
| | : | (Judge Kane) |
| JOHN DOE, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Presently before the Court is the motion for summary judgment (Doc. No. 25) filed by Defendant Lieutenant Bartow ("Bartow"). Pro se Plaintiff Jonathan Alan Good ("Plaintiff") has filed neither a response nor a motion seeking an extension of time to do so. Accordingly, because the time for filing a response has expired, the motion for summary judgment is ripe for disposition.

**I.      BACKGROUND**

On March 18, 2020, Plaintiff, who was then incarcerated at the State Correctional Institution Benner Township in Bellefonte, Pennsylvania ("SCI Benner Township"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against five (5) John Doe Defendants, all of whom were employed at SCI Camp Hill, concerning events that occurred while Plaintiff was incarcerated there. (Doc. No. 1.) In an Order dated March 19, 2020, the Court granted Plaintiff leave to proceed in forma pauperis and directed him to provide names for the John Doe Defendants within thirty (30) days. (Doc. No. 7.) Plaintiff subsequently filed a motion seeking to add Lieutenant Bartow as a Defendant. (Doc. No. 8.) In an Order dated April 3, 2020, the Court denied Plaintiff's motion without prejudice to Plaintiff's right to file an amended complaint setting forth his claims against Lieutenant Bartow. (Doc. No. 10.) The

Court advised Plaintiff that if he failed to file his amended complaint within thirty (30) days, the above-captioned case would proceed on his original complaint. (Id. at 2.)

Plaintiff filed his amended complaint on April 30, 2020, naming the five (5) John Does and Lieutenant Bartow as Defendants. (Doc. No. 11.) Plaintiff alleges that in March of 2018, he had built a snowman in the yard, and Sergeant Border "singled [him] out from the other two inmates who had built a snowman in the yard." (Id. at 6.) Sergeant Border issued a misconduct charging Plaintiff with disobeying an order. (Id.) Plaintiff said that he "didn't f***ing do anything," and Sergeant Border responded, "yeah, yeah, suck my d***." (Id.) Plaintiff subsequently submitted a PREA complaint against Sergeant Border, and he was subsequently transferred to the Diversionary Treatment Unit ("DTU"). (Id.)

Plaintiff avers that the second shift corrections officers and sergeant refused to let him out of his cell for showers, refused to give him hygiene supplies and a cup for water, and refused to let him out of his cell for any DTU therapy groups. (Id.) Plaintiff also did not receive four (4) dinner trays. (Id. at 7.) Plaintiff threatened to smear feces all over his cell if he did not receive a cup and hygiene supplies. (Id.) He followed through with the threat. (Id.) Plaintiff subsequently took his sheet, tied it around his neck, and sat down on the floor, strangling himself. (Id. at 8.) Plaintiff maintains that the next thing he remember, his face was smashed by a plastic riot shield. (Id.) He claims that the second shift sergeant and four (4) corrections officers had entered his cell without a camera, nurse, or lieutenant present. (Id.) Plaintiff claims that after the sheet was removed from his neck, the corrections officers slammed his head to the floor and held his hands behind his back while the sergeant repeatedly punched him in the face. (Id.) Plaintiff was subsequently taken to the medical department for a bloody nose, and he was transferred to an emergency room in Harrisburg, Pennsylvania. (Id. at 8-9.) Plaintiff claims that

Defendant Bartow was the senior ranking officer in charge of supervising the DTU on March 24, 2018. (Id. at 10.) Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment right to be free from the use of excessive force. He seeks damages as relief. (Id. at 13.)

Defendant Bartow filed an answer to the amended complaint on June 29, 2020. (Doc. No. 19.) The parties subsequently engaged in discovery, which closed on March 5, 2021. (Doc. No. 22.) In an Order dated January 4, 2021, the Court directed Plaintiff to show cause why the John Doe Defendants should not be dismissed from the above-captioned action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. No. 20.) Plaintiff did not respond to the Court's Order. Accordingly, on February 23, 2021, the Court dismissed the John Doe Defendants without prejudice pursuant to Rule 4(m). (Doc. No. 23.)

Defendant Bartow filed his motion for summary judgment and supporting materials on April 22, 2021. (Doc. Nos. 25, 26, 27.) On April 23, 2021, observing that Defendant Bartow raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1] (Doc. No. 28.) The Court directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion and a statement of material facts responding to Defendants' statement within thirty (30) days. (Id.) As noted supra, Plaintiff has not responded.

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-cv-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv--01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. STATEMENT OF MATERIAL FACTS[2]

In March of 2018, Plaintiff was incarcerated at SCI Camp Hill, where the events alleged in his complaint occurred. (Doc. No. 26 ¶¶ 1-2.) At all relevant times, Defendant Bartow was a Corrections Officer or Lieutenant at SCI Camp Hill. (Id. ¶ 3.) Plaintiff was released on parole on June 3, 2020. (Id. ¶ 4.)

On March 24, 2018, Plaintiff was housed in cell A-4, E Unit, in the DTU. (Id. ¶ 5.) "Plaintiff smeared his feces inside his cell and informed staff that he was going to harm himself." (Id. ¶ 6.) Defendant Bartow "instructed staff to put on jump suits and when he arrived at the cell, he observed Plaintiff with a sheet tied around his neck and sitting on the floor." (Id. ¶ 7.) Defendant Bartow notified the control center and medical of the emergency, and he ordered that Plaintiff's cell door be opened. (Id. ¶¶ 8-9.) Defendant Bartow stood outside Plaintiff's cell while the team entered the cell. (Id. ¶ 9.) "When the team entered the cell, Plaintiff jumped to his feet and attempted to strike staff but ran face first into the capture shield." (Id. ¶ 10.) "Plaintiff was pinned to the floor while he was restrained with handcuffs." (Id. ¶ 11.) "Plaintiff

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendant Bartow's Rule 56.1 statement of facts. (Doc. No. 26.) Plaintiff has not filed a response to Defendant Bartow's statement of material facts in compliance with Local Rule 56.1. Accordingly, the Court deems the facts set forth by Defendant Bartow to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

was assessed by medical and taken to an outside facility for a possible broken nose." (Id. ¶ 12.) At no time did Defendant Bartow touch Plaintiff, and a "portion of the incident was captured on a hand held video camera." (Id. ¶¶ 13-14.)

"Plaintiff first filed a grievance regarding the incident on September 2, 2019, but [Defendant] Bartow was not named in the grievance." (Id. ¶ 15.) "Grievance form was available to Plaintiff from the law library at a minimum, but Plaintiff chose not to obtain the form and file in a timely manner." (Id. ¶ 16.) "Plaintiff's grievance was denied as untimely because his grievance/appeals were not submitted within fifteen (15) working days of the March 24, 2018 incident pursuant to the requirements of DC-ADM 804, but about a year and a half later on September 2, 2019." (Id. ¶ 17.)

## IV. DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff cannot maintain his official capacity claims against Defendant Bartow; (2) Plaintiff cannot maintain his supervisory liability claims against Defendant Bartow; and (3) Plaintiff failed to exhaust his administrative remedies. (Doc. No. 27 at 4.) The Court considers Defendant Bartow's arguments below.

### A. Official Capacity Claims

Plaintiff has brought suit against Defendant Bartow in his individual and official capacities. (Doc. No. 11 at 2.) However, Plaintiff's official capacity claims against Defendant Bartow are "barred by sovereign immunity." See Jones v. Unknown D.O.C. Bus Driver and Transp. Crew, 944 F.3d 478, 482 (3d Cir. 2019): see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (noting that a suit against a state official in his official capacity is a suit against his office and cannot proceed under § 1983); Kentucky v. Graham, 473 U.S. 159, 165-67

7

(1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Wells v. Wetzel, No. 3:16-cv-842, 2021 WL 1197699, at *3 (M.D. Pa. Mar. 30, 2021) (concluding that state officers were entitled to summary judgment with respect to the inmate-plaintiff's claims for monetary damages against them in their official capacities). Accordingly, the Court will grant Defendant Bartow's motion for summary judgment with respect to Plaintiff's claims for monetary damages against him in his official capacity.

B. **Exhaustion of Administrative Remedies**

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues"). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after initiating the above-captioned action, he is still bound by the exhaustion requirement

8

because he has raised claims concerning events that occurred prior to his release.[3] See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

---

[3] The Court recognizes that the Third Circuit recently concluded that the PLRA's exhaustion requirement did not apply to a situation where a plaintiff had been released from prison during the pendency of his lawsuit and, after release, filed a third and fourth amended complaint. See Garrett v. Wexford Health, 938 F.3d 69, 84 (3d Cir. 2019). The Garrett court noted that, in that instance, the plaintiff's "status as a non-prisoner at the time he filed the [third amended complaint was] determinative of the Medical Defendants' administrative exhaustion defense." See id. at 87. In the instant case, however, Plaintiff is proceeding on the amended complaint he filed while still incarcerated. The Court concludes that Garrett is inapposite to the above-captioned case and, therefore, does not apply to excuse Plaintiff from satisfying the PLRA's exhaustion requirement.

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

Defendant Bartow maintains that he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies. (Doc. No. 27 at 11-13.) He avers that Plaintiff did not name him in his grievance and that, in any event, Plaintiff's "grievance was not filed in accordance with the time requirements of DC[]-ADM 804." (Id. at 13.) In support of his argument, Defendant Bartow has provided a transcript of Plaintiff's deposition, a copy of DC-

11

ADM 804, and copies of Plaintiff's grievances and responses thereto. (Doc. Nos. 26-1, 26-4, 26-5.) With respect to proper exhaustion under the PLRA, "it is the prison's requirements, [] not the [Act], that define the boundaries of proper exhaustion." See Wright v. Sauers, 729 F. App'x 225, 227 (3d Cir. 2018) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).

DC-ADM 804 provides that a grievance must be submitted "to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based." (Doc. No. 26-5 at 5.) Time extensions for filing grievances are "considered on a case-by-case basis." (Id. at 9.) "The inmate must notify the Facility Grievance Coordinator/designee of the reason for the delay." (Id.) The Facility Grievance Coordinator/designee considers that reason and also considers whether the delay was caused by: (1) a temporary transfer from the facility where the inmate should have filed the grievance; (2) a permanent transfer from the facility where the inmate should have filed the grievance; (3) an authorized temporary absence for an extended period; (4) mail delivery delay; or (5) any other reason deemed appropriate. (Id.) "If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted." (Id.)

The record before the Court reflects that Plaintiff filed a grievance regarding the March 24, 2018 incident on September 2, 2019, while he was incarcerated at SCI Benner Township. (Doc. No. 26-4 at 2.) In the grievance, Plaintiff mentioned that he had filed a PREA complaint against Sergeant Border. (Id.) Plaintiff referenced the second shift sergeant and corrections officers involved in the alleged assault, but did not mention Defendant Bartow. (Id.)[4] On

---

[4] In his grievance, Plaintiff references that under Pennsylvania law, he has two (2) years from the date of the incident to file a lawsuit. (Doc. No. 26-4.) To the extent Plaintiff believed he had two (2) years to file a grievance, he is "confusing the applicable statute of limitations for the claims asserted in his complaint with the time limits for the grievance procedure set forth in DC-

12

September 6, 2019, the Facility Grievance Coordinator rejected Plaintiff's grievance because it was "not submitted within fifteen (15) working days after the events upon which claims are based." (Id. at 3.) Plaintiff appealed the rejection to the Facility Manager, arguing that he never had an opportunity to file within the fifteen (15)-day time limit. (Id. at 4-5.) The Facility Manager upheld the rejection on September 27, 2019. (Id. at 6.) Plaintiff then appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. at 7.) SOIGA upheld the rejection on November 14, 2019. (Id. at 1.) SOIGA noted that while DC-ADM 804 "does allow for a time extension to file a grievance depending on the circumstances, it also states that a <u>reasonable</u> extension of time for filing shall be permitted—an 18 month delay far exceeds a reasonable extension of time." (Id.)

During his deposition, Plaintiff testified that he was unable to file a grievance about the events of March 24, 2018 while he was still incarcerated at SCI Camp Hill because he was transferred out three (3) days after the incident occurred and because corrections officers refused to give him a grievance form when he asked for one. (Doc. No. 26-1 at 34-35.) Plaintiff, however, admitted that he could have gone to the law library and obtained a grievance form. (Id. at 37.) Plaintiff testified further that when he was transferred to SCI Huntingdon, he did not learn that he could file a grievance regarding something that happened at another facility until a month after he arrived there. (Id. at 39.) Plaintiff also testified that he was placed in the Restricted Housing Unit ("RHU") at SCI Huntingdon, and that corrections officers assigned to the RHU either refused to give him a grievance form or made the form unusable by blacking out certain portions of the form. (Id. at 40.) Plaintiff noted that he was unable to go to the law

---

ADM 804." See Glenn v. Mataloni, No. 1:20-cv-69, 2020 WL 7027597, at *19 n.10 (M.D. Pa. Nov. 30, 2020).

library during his time at SCI Huntingdon. (Id.) He was transferred to SCI Benner Township three (3) months later. (Id. at 41.) Plaintiff testified that he could have submitted a grievance in August of 2018 when he arrived at SCI Benner but waited because he did not "want to get off on the wrong foot with [those] COs." (Id. at 43.) He also indicated that he attempted to file his grievance several times before September of 2019, but that the original three (3) versions were sent back "because of administration people of the DOC writing on the envelope return to sender, don't have this included, return to sender, don't have this included." (Id. at 44-45.) Plaintiff, however, threw all of those documents out while he was incarcerated at SCI Benner Township. (Id. at 45-46.)

The Third Circuit has recognized that the refusal to provide an inmate with a grievance form, if the form is necessary for exhaustion, renders the grievance process unavailable within the meaning of 42 U.S.C. § 1997e(e). See Spada v. Martinez, 579 F. App'x 82, 86 (3d Cir. 2014) (remanding for the district court to consider whether prison officials refused to provide the inmate-plaintiff with grievance forms within the fifteen (15)-day working period). As noted supra, Plaintiff's testimony during his deposition suggests that the grievance process was rendered unavailable because officers at SCI Camp Hill and SCI Huntingdon refused to provide grievance forms to him. Plaintiff, however, also testified that he knew that he could obtain grievance forms in the law library at SCI Camp Hill, but he chose not to do so. (Doc. No. 26-1 at 37.) DC-ADM 804 provides that initial grievance forms "shall be readily available on every housing unit as well as in the main and mini-law libraries." (Doc. No. 26-4 at 4.) Plaintiff's own testimony, therefore, does not conclusively establish that the grievance process was rendered unavailable to him during his remaining days at SCI Camp Hill. See Spada v. Martinez, 663 F. App'x 112, 114-15 (3d Cir. 2016) (affirming the district court's grant of summary judgment on

14

the basis that even though the inmate-plaintiff argued that staff members refused his requests for grievance forms, such forms were freely available near the nurse's station in his housing unit and, therefore, the inmate-plaintiff had not demonstrated that his administrative remedies were obstructed).

In any event, even if Plaintiff had timely filed his grievance regarding the events of March 24, 2018, DC-ADM 804 also provides that the inmate must "identify individuals directly involved in the event(s)" in his grievance. (Doc. No. 26-5.) As noted supra, Plaintiff did not name Defendant Bartow in his grievance proceedings regarding the events of March 24, 2018. The Third Circuit has noted that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." See Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005). In the instant case, Plaintiff did not identify Defendant Bartow in his grievance, and he did not "identify any harm perpetuated by" him. See Watson v. Wingard, 782 F. App'x 214, 217 (3d Cir. 2019).

In sum, the record before the Court reflects that the administrative grievance procedure was not rendered unavailable to Plaintiff during the fifteen (15)-day period for filing his grievance after the events of March 24, 2018 and that, in any event, he failed to name Defendant Bartow in his grievance. Moreover, the "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). Defendant Bartow, therefore, is entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to his claims against him. Nevertheless, the Court considers the merits of Plaintiff's claims below.

## C. Supervisory Liability Claims

In his amended complaint, Plaintiff avers that Defendant Bartow was the "senior ranking officer" in charge of supervising the DTU on March 24, 2018. (Doc. No. 11 at 10.) He claims that because of Defendant Bartow's supervisory position, he "is to be held equally responsible for [Plaintiff] being assaulted" because the sergeant and four (4) corrections officers "would not have made the decision to enter [his] cell and assault [him] without [Defendant] Bartow knowing of their intentions to do so." (Id.) Plaintiff also suggests that Defendant Bartow assisted the sergeant and corrections officers in "covering up" the assault by instructing them to not include their names anywhere on the misconduct issued to Plaintiff. (Id.) Defendant Bartow asserts that Plaintiff's Eighth Amendment claim against him fails "because there is no supervisory liability under [§] 1983." (Doc. No. 27 at 7.)

Under Section 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Liability "cannot be predicated solely on the operation of respondeat superior." See id. In other words, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." See Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003).

With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." See Santiago v. Warminster

Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). With respect to the first theory, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

In the instant case, Plaintiff fails to establish plausible supervisory liability claims against Defendant Bartow. Plaintiff cites no evidence from which a reasonable jury could conclude that Defendant Bartow directed others to violate Plaintiff's constitutional rights, knew of such violations and acquiesced in them, or maintained a policy or custom that caused Plaintiff constitutional harm. See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Rather, in his deposition, Plaintiff testified that Defendant Bartow was "not [his] concern" and that he "needed to include him in this whole lawsuit because he was there and because I know that he knows" the names of the John Doe Defendants. (Doc. No. 26-1 at 23-

17

24.) The Court, therefore, will grant Defendant Bartow summary judgment with respect to Plaintiff's claims against him.[5]

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Bartow's motion for summary judgment (Doc. No. 25). An appropriate Order follows.

---

[5] As noted supra, Plaintiff also appears to suggest that Defendant Bartow conspired with the John Doe Defendants to cover up the assault by instructing them to not include their names anywhere on the misconduct issued to Plaintiff. (Doc. No. 11 at 10.) However, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Plaintiff, however, cites no evidence from which a reasonably jury could conclude that Defendant Bartow conspired with the John Doe Defendants. Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation.